# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LEWIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF FRESNO, *et al.*,<br><br>　　　　Defendants. | CASE NO.  1:11-CV-01415-LJO-SKO<br><br>**ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT (DOC. 29)** |

## I. INTRODUCTION

Plaintiff Robert Lewis, proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants the City of Fresno, the Fresno Police Department ("FPD"), and FPD Officer Gregory Catton. Doc. 1. On December 20, 2011, the Magistrate Judge screened Plaintiff's complaint and found that it states a Section 1983 claim for damages against Defendant Catton for alleged excessive force, but fails to state any other claims for relief. Doc. 8. Before the Court for decision is Defendant Catton's motion for summary judgment on the remaining Section 1983 excessive force claim. Doc. 29. Plaintiff failed to respond to the motion, despite having been served at the new mailing address provided by Plaintiff. *See* Docs. 30-33.[1] The hearing on the motion, originally set for December 11, 2013, was vacated, and the matter was submitted for decision on the pleadings pursuant to Local Rule 230(g). Doc. 34.

---

[1] On December 11, 2013, two weeks after his opposition was due, Plaintiff requested an extension of time to respond to the motion. That request was denied for the reasons set forth in a separate order. *See* Doc. 35.

1

## II. FACTUAL BACKGROUND[2]

According to the Declaration of Officer Catton, the content of which is undisputed, just prior to 1:00 a.m. on August 22, 2009, Officer Catton responded along with several other officers to a disturbance call from a gas station in Fresno. Doc. 29-3 at ¶ 2. The caller reported that a black male subject in his 50s wearing a white shirt and shorts had reportedly thrown a beer bottle through a window. *Id*. Upon the officers' arrival, the gas station clerk pointed out a man, later identified as Robert Lewis, who was shouting at a female in the parking lot while swinging his arms near the woman's head. *Id*.

Officer Catton and the other officers approached Mr. Lewis and instructed him to get on the ground. *Id*. at ¶ 3. Lewis ignored this command and responded by stating: "screw that." *Id*. Officer Catton then pushed Lewis to the ground and managed to get him handcuffed with the assistance of other officers. *Id*. Mr. Lewis smelled strongly of alcohol. *Id*. In between ranting such phrases as "peckerwood nigger," Mr. Lewis complained of back pain and shortness of breath. *Id*. at ¶ 4. Officer Catton requested an ambulance to check Lewis' medical condition. *Id*.

When the ambulance arrived, EMTs requested that Officer Catton remove one of Mr. Lewis' handcuffs, so they could check his vital signs. *Id*. Although apprehensive to do so, Officer Catton removed Mr. Lewis' left hand from the handcuffs and secured the right hand to the gurney. *Id*. While the EMTs were checking Lewis' vitals, Lewis turned to Catton and stated: "I'm going to kick your ass." *Id*. In response, Catton informed Lewis that he was going to handcuff his left hand to the gurney as well. *Id*. When Catton attempted to do so, however, Lewis held his arm closely to his chest and kicked Catton in the chest hard enough to knock Catton off the gurney. *Id*. at ¶ 5. As Catton stood back up to grab Mr. Lewis' left arm, Lewis kicked Catton again with both feet. *Id*. Catton then managed to grab Lewis' left

---

[2] On August 13, 2013, Defendant served upon Plaintiff at a Sacramento address Requests for Admission ("RFAs") largely tracking the content of Officer Catton's Declaration. *See* Doc. 29-4. Plaintiff failed to respond to the RFAs. This might warrant treatment of the facts set forth therein as admitted. However, only a few weeks later, on September 3, 2013, mail sent by the Court to the same Sacramento address was returned as undeliverable. As mentioned above, Plaintiff filed a notice of change of address in November 2013. It is not clear whether the RFAs ever actually reached Plaintiff. Because Officer Catton's declaration has been made a part of the summary judgment record, which has been served upon Plaintiff, out of an abundance of caution, the Court will rely upon the Declaration instead of the RFAs.

arm, at which point Lewis bit down on Catton's left arm, drawing blood. *Id*. While Catton struggled to control Lewis, Lewis bit Catton's arm several more times. *Id*.

Because Lewis continued to bite and kick, Officer Catton warned Lewis that he would be Tased if he did not stop. *Id*. at ¶ 6. When Lewis continued to ignore Officer Catton's commands, Catton discharged his Taser into Lewis' neck. *Id*. Although the Taser seemed to momentarily disable Lewis, as soon as the Taser's immediate impacts subsided, Lewis again began to struggle violently. *Id*. Eventually, several other officers arrived, and, together, they were able to handcuff Lewis' free hand to the gurney. *Id*.

### III. STANDARD OF DECISION

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation and quotation omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence to support the non-moving party's case." *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## IV. DISCUSSION

**A.      Fourth Amendment Excessive Force Standard & Qualified Immunity.**

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation and citation omitted).

> ...Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. (internal quotations and citations omitted).

> The reasonableness of a particular use of force must be judged from the

4

> perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force...: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id*. at 396-97 (internal quotations and citations omitted).

"As in other Fourth Amendment contexts ... the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (internal quotation and citation omitted). Liability for damages under § 1983 only arises upon a showing of personal participation by the defendant. *Starr v. Baca*, 652 F.3d 1202, 1221 (9th Cir. 2011) (internal citation and quotation omitted). Each Defendant's conduct must be independently evaluated.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law...." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted).

The qualified immunity inquiry has two prongs: (1) "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546,

550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 129). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case. *Id*. at 201, 205. "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 245.  Where there is a dispute in the underlying evidence, qualified immunity cannot be granted. *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.").

In the excessive force context, the first step of the qualified immunity analysis requires an inquiry into "whether it would be objectively reasonable for the officer to believe that the amount of force employed was required by the situation he confronted." *Id*. at 954 (quoting *Saucier v Katz*, 533 U.S. 194, 205 (2001)). "That is, the first step in the analysis is an inquiry into the objective reasonableness of the officer's belief in the <u>necessity</u> of his actions, and there is no Fourth Amendment violation if the officer can satisfy this standard." *Id*. (internal citation and quotation omitted) (emphasis in original). The second step of the analysis inquires whether the officer was reasonable in his belief that his conduct did not violate the Constitution. "This step, in contrast to the first, is an inquiry into the reasonableness of the officer's belief in the <u>legality</u> of his actions." *Id*. at 955.  "Even if his actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity." *Id*.

Critically, however, the Court must not lose sight of the summary judgment standard. If facts material to resolving Fourth Amendment "reasonableness" and/or any of the related qualified immunity inquiries are disputed, those facts must be viewed in the light most favorable to the non-moving party. *See id*. at 951.

B.  **<u>Constitutional Violation.</u>**

The first prong of the qualified immunity analysis applied at the summary judgment stage requires a Court to inquire "whether the facts that a plaintiff has … shown ... make out a violation of a constitutional right." *Wilkinson*, 610 F.3d at 550. Here, the only evidence presented is that provided by Officer Catton. According to his version of the events, he responded to Plaintiff's increasingly belligerent conduct with force designed to protect himself and the emergency services personnel from harm. Under *Graham,* the key question is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." 490 U.S. at 397. Based upon the only evidence presented, the Court reaches the inescapable conclusion that Officer Catton's use of force was objectively reasonable. The greatest application of force by Officer Catton was his use of the Taser. As another Judge in this District recently summarized:

> <u>[I]n cases where a handcuffed arrestee is struggling or resisting, courts have found that use of force, including a taser, may be constitutionally appropriate</u>. *See Sanders v. City of Dothan,* 409 Fed. Appx. 285, (11th Cir. 2011) (finding that as of August 24, 2005 the law was not clearly established that an officer violated a constitutional right by using a taser on an arrestee while he was handcuffed in the back of a patrol car to prevent him from swallowing contraband); *Buckley v. Haddock,* 292 Fed. Appx. 791, 787, 2008 WL 4140297, at *6 (11th Cir. 2008) (holding that, as of March 2004, it was not clearly unlawful to use a taser to get a noncompliant, handcuffed suspect off the ground and into a patrol car after a traffic stop); *Zivojinovich v. Barner,* 525 F.3d 1059, (11th Cir. 2008) (finding that defendant officer did not use excessive force by deploying a taser against a handcuffed arrestee who was intentionally spraying blood at the officer through his broken nose), *Yarnall v. Mendez,* 509 F.Supp.2d 421, 433 (D. Del. 2007) (holding that it was reasonable and necessary for defendant officers to use taser and physical force against a fleeing, handcuffed suspect); *Rose v. City of Lafayette,* 2007 WL 485228, at * 6 (D. Colo. 2007) (finding that a reasonable officer would not have had "fair notice" that it was objectively unreasonable to use a taser on a handcuffed arrestee in detention who had kicked an officer), *Johnson v. City of Lincoln Park,* 434 F.Supp.2d 467, (E.D. Mich. 2006) (holding that use of a taser on a handcuffed, resisting, struggling, unarmed 14–year–old suspect was objectively reasonable), *Carroll v. County Trumbull,* 2006 WL 1134206, *13 (N.D. Ohio, Apr.25, 2006) (granting qualified immunity to officer who used taser on a kicking, resisting, handcuffed arrestee); *Wilkomm v. Mayer,* 2006 WL 582044, at *4 (W.D. Wis., Mar.9, 2006) (holding that as a reasonable officer could have believed it was constitutional to use a taser to gain compliance from a belligerent, handcuffed arrestee); *Devoe v. Rebant,* 2006 WL 334297, at *7 (E.D. Mich. 2006) (finding that it was objectively reasonable for defendant officer to use taser on handcuffed plaintiff who would not get into the officer's patrol car).

*Wade v. Fresno Police Dep't*, 1:09-CV-0599 AWI-BAM, 2012 WL 253252 (E.D. Cal. Jan. 25, 2012) aff'd, 529 F. App'x 840 (9th Cir. 2013) (emphasis added).

It is not necessary to proceed to the second step of the qualified immunity analysis, as Plaintiff's claim fails at the first step. Accordingly, Defendant's motion for summary judgment as to the remaining excessive force claim against Defendant Catton is GRANTED.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED. This disposes of the only remaining claim in this case.

The Clerk of Court is directed to enter judgment for Defendant and against Plaintiff.

IT IS SO ORDERED.

Dated:   **December 13, 2013**          **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE

8